# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAYNE JACKSON, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 16-869-LPS |
| | : | |
| DANA METZGER, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

Wayne Jackson.  *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

May 29, 2020
Wilmington, Delaware



STARK, U.S. District Judge:

## I.     INTRODUCTION

Presently pending before the Court is Petitioner Wayne Jackson's ("Petitioner") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition").  (D.I. 3)  The State filed an Answer in opposition.  (D.I. 27)  For the reasons discussed, the Court will dismiss the Petition.

## II.    BACKGROUND

As summarized by the Delaware Supreme Court with respect to Petitioner's direct appeal, the facts leading up to his arrest and conviction are set forth below:

> On September 25, 2006, Thomas Dykes discovered that his home at 2010 North Broom Street in Wilmington had been burglarized.  A cordless telephone, laptop computer, digital camera, DVD player, gold bracelet, leather bag, and jar of change were missing.  Dykes called the police and Officer Gerald Nagowski of the Wilmington Police Department went to Dykes' home.  The screen of a window in the back of the house had been cut near the latches, making that window the burglar's likely point of entry.  Nagowski dusted the area for fingerprints and recovered two latent prints.
>
> On October 10, 2006, Timothy Lewis discovered that his home at 2207 Van Buren Place in Wilmington had been burglarized.  A cellular telephone, digital camera and one dollar were missing.  Lewis called the police and Nagowski went to Lewis' home.  Nagowski identified two adjacent windows in the back of the house where the screens had been cut as the likely point of entry.  He dusted the area and recovered one latent fingerprint.
>
> On December 20, 2006, Officer Joseph Sammons, supervisor of the Wilmington Police Department's Evidence Detection and Fingerprint Identification Unit, analyzed the latent prints recovered from the Broom Street and Van Buren Place homes.  After comparing them to a known print in the department's records, Sammons determined that the latent prints from the Broom Street home matched [Petitioner's] known print, and that the latent print from the Van Buren Place home compared positively with [Petitioner's] known print.
>
> On January 20, 2007, New Castle County Police Officer Alan Herring made a traffic stop on Polk Drive in Edgemoor around 8 p.m.  The driver of the car fled on foot and Herring chased him, but could not

catch him. Herring radioed for assistance and broadcast a description of the driver as an African-American male, approximately six feet tall, thin build, medium dark to dark complexion, with facial hair, and wearing a golden-brown "puffy" coat. A K–9 unit responded to the scene and the police dog tracked the suspect from the abandoned car, south through Edgemoor, and in the direction of Merchants Square Shopping Center on Governor Printz Boulevard, north of the city of Wilmington. Several police officers set up a cordon in the area where the driver was likely to flee. Officer Daniel Guzevich stationed himself in the Merchants Square Shopping Center.

Around 8:30 p.m., Guzevich saw a man riding a bicycle enter the shopping center's nearly empty parking lot. The man on the bike resembled the suspect described by Herring. Guzevich described the bicyclist as a tall, thin, African-American man, with facial hair and a dark complexion. The bicyclist was not wearing a "puffy" coat, but Guzevich discounted this difference, because the suspect had fled half an hour earlier and had time to change his clothes. Guzevich decided to question the man and drove toward him.

When the man noticed the police car approaching, he fled immediately. Guzevich turned on the police car's emergency lights and followed him. The man crashed his bicycle into the curb, dropped the bag he was carrying and fled on foot. Guzevich got out of the police car and chased the man on foot, eventually catching up, and physically subduing him and arresting him. The man Guzevich arrested was later determined to be [Petitioner]. The man who had abandoned his vehicle on Polk Drive was later determined to be Carron Moon. The abandoned vehicle was registered to Terrance Tonic.

During the search of [Petitioner] incident to his arrest, Guzevich found in [Petitioner's] pockets an iPod, a Palm Pilot, a photo of a young girl, a University of Delaware class ring, and twenty dollars. In the bag [Petitioner] had dropped, Guzevich found a laptop computer, another iPod, various cords for the iPod and computer, and a shattered glass coin bank with loose change. When Guzevich turned on the computer, it displayed the names of various members of the Callaghan family. The name "Eugene F. Callaghan" was also inscribed on the inside of the University of Delaware class ring. The police determined that a Eugene F. Callaghan lived at 191 Brandywine Boulevard, about half a mile from where [Petitioner] was arrested. The police went to the Callaghan residence.

The Callaghans were not home when the police arrived, but a neighbor called them and they returned home soon after. Eugene Callaghan identified the various items recovered from [Petitioner] as the

2

> Callaghan family's computer, Eugene Callaghan's iPod, his daughter's iPod, the family's coin bank, and Eugene Callaghan's class ring. Callaghan also identified the bicycle [Petitioner] was riding as belonging to Callaghan's son and the photo taken from [Petitioner's] pocket as a picture of Callaghan's daughter.
>
> The police later compared [Petitioner's] fingerprints with the fingerprints found at several other homes that had been burglarized in September, October and December 2006. Jackson's prints matched those taken from four other homes that had been burglarized in North Wilmington.

*Jackson v. State*, 990 A.2d 1281, 1282–84 (Del. 2009).

On February 20, 2007, Petitioner was indicted on nine counts of second degree burglary, twelve counts of theft, five counts of criminal mischief, one count of third degree burglary, one count of third degree forgery, one count of criminal impersonation, one count of resisting arrest, and one count of making a false statement to police. (D.I. 27 at 1) The State obtained a new indictment in September 2007, and the case proceeded to trial in October 2007. *See Jackson*, 990 A.2d at 1284. Before jury selection, the State *nolle prossed* the charges relating to the four North Wilmington burglaries. *Id.* In October 2007, a Delaware Superior Court jury convicted Petitioner of three counts of second degree burglary and three counts of felony theft. *See Jackson*, 990 A.2d at 1284. The Superior Court sentenced him as a habitual offender to an aggregate 24 years of incarceration followed by descending levels of supervision. The Delaware Supreme Court affirmed Petitioner's convictions and sentence. *See Jackson*, 990 A.2d at 1290.

Beginning in 2009, Petitioner filed several *pro se* motions for modification of sentence, and all were denied by the Superior Court. (D.I. 27 at 2)

In May 2011, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). On August 29, 2014, the Superior Court

3

denied the Rule 61 motion.  The Delaware Supreme Court affirmed that decision.  *See Jackson v. State*, 124 A3d 1015 (Table), 2015 WL 5679639, at *1 (Del. Sept. 25, 2015).

## III.    LEGAL STANDARDS

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In

5

order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

**B.  Standard of Review**

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and

convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV.    DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court, asserting the following claims: (1) the Delaware courts erred by not applying *United States v. Cronic* to his ineffective assistance of appellate counsel claim and by failing to presume he was prejudiced by appellate counsel's deficient performance; (2) the Delaware courts erred in finding that his attempt to demonstrate he was prejudiced by appellate counsel's deficient performance was procedurally barred from review under Superior Court Criminal Rule 61(i)(4); (3) appellate counsel provided ineffective assistance by failing to specifically argue a search and seizure issue under the Delaware Constitution; and (4) trial counsel provided ineffective assistance by failing to cross-examine a fingerprint expert more thoroughly.

Petitioner presented the same four arguments to the Delaware Supreme Court in his Rule 61 appeal, which rejected them "on the basis and for the reasons assigned by the Superior Court." *Jackson*, 2015 WL 5679639, at *1.  Since the Delaware Supreme Court explicitly relied on the Superior Court's reasoning in its decision, the Court will reference the Superior Court's decision in its analysis.  In turn, although the Superior Court denied the *Strickland* argument in Claim Two as procedurally defaulted under Rule 61(i)(4) because the underlying issues were formerly adjudicated in Petitioner's direct appeal, Rule 61(i)(4) does not result in a procedural default for federal habeas purposes.  Rather, the fact that the claim was formerly adjudicated means that it was decided on the merits.  *See Trice v. Pierce*, 2016 WL 2771123, at *4 n. 4 (D. Del. May 13, 2016).  Thus, the Court will

review all four Claims under § 2254(d)(1), which means that Petitioner will not be entitled to federal habeas relief unless the Superior Court's decision was either contrary to, or based upon an unreasonable application of, clearly established federal law.

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

However, in *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court articulated a limited exception to *Strickland*'s requirement that a petitioner must demonstrate both

8

deficient performance and prejudice in order to prevail on an ineffective assistance of counsel claim, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *See Cronic*, 466 U.S. at 659 & n.25. The *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire proceeding. *See Bell v. Cone*, 535 U.S. 685, 697 (2002). This presumption of prejudice is sometimes referred to as "*per se*" ineffective assistance of counsel. *See Thomas v. Horn*, 750 F.3d 105, 113 n.3 (3d Cir. 2009).

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Since the Delaware Superior Court correctly identified the *Strickland* and *Cronic* standards in Petitioner's case, the Superior Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Superior Court reasonably applied the *Strickland* and *Cronic* standards to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Superior Court's denial of Petitioner's ineffective

assistance of counsel claims through a "doubly deferential" lens.[1]  *See Richter*, 562 U.S. at 105.  The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  In turn, when assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id.*  Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id.* at 101.

### A.   Claim One: *Per Se* Ineffective Assistance of Appellate Counsel

In Claim One, Petitioner contends that appellate counsel "was essentially absent throughout the entirety of the appellate process.  The only task appellate counsel completed was filing an opening brief with [the Delaware Supreme Court]."  (D.I. 3 at 11)  Consequently, Petitioner asserts that the Court should apply *Cronic* and assume he was prejudiced by appellate counsel's performance.  *Id.*

Petitioner presented the same argument to the Superior Court in his Rule 61 motion. As explained by the Superior Court, "[j]udging from the appellate record, appointed appellate counsel

---

[1]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

put forth little effort, and apparently exercised no professional judgment to speak of when prosecuting [Petitioner's] appeal." *Jackson*, 2014 WL 4407844, at *9.  However, despite appellate counsel's "sub-par" representation, the Superior Court refused to apply *Cronic*, stating:

> *Cronic* has been applied in the appellate court context only when counsel's failure has served to deprive the defendant of an appeal. Poor presentation or selection of arguments on appeal is not  the sort of shortcoming which the Supreme Court envisions would fall within *Cronic*.

*Jackson*, 2014 WL 4407844, at *11.  The Superior Court then held that "*Cronic* is inapplicable here," so Petitioner "must show prejudice resulting from his appointed counsel's failures."  *Id.*

After reviewing the record, the Court concludes that the Superior Court reasonably applied *Cronic* in refusing to presume prejudice.  As the Superior Court recognized, the *Cronic* presumption of prejudice is a narrow exception to the *Strickland* framework and, in the appellate context, only applies if the defendant was completely denied the assistance of counsel on appeal.  *See Penson v. Ohio*, 488 U.S. 75, 88 (1988) (prejudice is presumed if accused is left "entirely without the assistance of counsel on appeal").  In finding *Cronic* inapplicable to Petitioner's allegations regarding appellate counsel, the Superior Court cited extensively to the United States Supreme Court's opinion in *Penson* to distinguish between cases in which a denial of counsel left the defendant "completely without representation" during the appeals process (triggering the *Cronic* exception) and "cases such as [Petitioner's] where counsel made a poor argument" (failing to trigger the *Cronic* exception).  *Jackson*, 2014 WL 4407844, at *11.  The Superior Court also rejected Petitioner's argument that appellate counsel's performance amounted to a "complete failure of representation," explaining that his contention was "contradicted by [Petitioner's] allegations of specific departures from the accepted norm."  *Id.*  As noted by the Superior Court, the "United States Supreme Court drew the distinction between a complete failure of representation under *Cronic* and something less than a complete failure

11

of representation for purposes of the second prong of the *Strickland* test." *Jackson*, 2014 WL 4407844, at *11

In this case, Petitioner's original appellate counsel determined that Petitioner had no appealable issues, but the Delaware Supreme Court appointed substitute counsel ("appellate counsel") to represent Petitioner on appeal.  *See Jackson*, 2014 WL 4407844, at *1.  Appellate counsel then filed a 19-page brief raising two nonfrivolous arguments; namely, that the trial court committed reversible error in denying Petitioner's motion to sever the charges and his motion to suppress evidence.  Appellate counsel never withdrew during the appeal, continuing to represent Petitioner and communicate with him.  In short, while appellate counsel's performance may have been "subpar," he provided sufficient representation for *Cronic* purposes.

Thus, for all the above reasons, the Court concludes that the Superior Court did not unreasonably apply clearly established federal law in holding that *Cronic* did not apply to Petitioner's case.  Petitioner's allegations regarding appellate counsel's errors must, instead, be reviewed under *Strickland*.

### B.  Claim Two: Ineffective Assistance of Appellate Counsel

In Claim Two, Petitioner states "[i]f the Court determines that *Cronic* is not the applicable standard by which to evaluate [his] claims of ineffectiveness of appellate counsel, then the two-pronged test of Strickland applies." (D.I. 3 at 14)  He asserts that appellate counsel failed to effectively present the following two arguments on direct appeal: (1) the trial court erred by denying Petitioner's motion to sever the charges; and (2) the trial court erred by denying Petitioner's motion to suppress evidence.  As already explained, Petitioner presented these arguments to the Superior Court in his Rule 61 motion, which determined that Petitioner was procedurally barred by Superior Court Criminal Rule 61(i)(4) from presenting these claims because they were refinements or

restatements of the claims he presented to the Delaware Supreme Court on direct appeal. Yet, as also previously explained, the Superior Court's application of Rule 61(i)(4) constitutes an adjudication on the merits for federal habeas purposes. Thus, the Court will review Petitioner's arguments concerning appellate counsel under § 2254(d)(1).

### 1. Appellate counsel's failure to effectively argue severance

The following background information is helpful in understanding Petitioner's severance issue. Petitioner was originally charged with 34 offenses, including eight counts of second degree burglary. Defense counsel filed a motion to sever, which the trial court denied. Petitioner was re-indicted, and the case proceeded to trial. Before the jury was selected, the State entered a *nolle prosequi* on the charges relating to the four burglaries in North Wilmington. Petitioner was convicted of three counts of second degree burglary and three counts of felony theft.

On direct appeal, appellate counsel argued that the trial court committed reversible error in failing to grant his motion to sever because the joinder of his charges unduly prejudiced him, outweighing considerations of judicial economy. More specifically, appellate counsel contended that the trial court should have granted the severance motion because there was no evidence of a common scheme or plan linking Petitioner to all three burglaries that were the subject of the charges that went to trial. Appellate counsel also argued that the different charges required different witnesses and different evidence, thereby reducing any judicial economy achieved by trying the charges together.

After explaining that the "rule of joinder is designed to promote judicial economy and efficiency, as long as the defendant's rights are not compromised," the Delaware Supreme Court conducted a two-step inquiry to determine if the joinder of offenses in Petitioner's case was proper. *Jackson*, 990 A.2d at 1286. First, the Delaware Supreme Court concluded that, pursuant to Delaware

Superior Court Criminal Rule 8(a), the State "***could*** have joined the charges against [Petitioner]," because the charges "arose from a series of residential burglaries that were, indisputably, of the same or similar character." *Jackson*, 990 A.2d at 1287 (emphasis in original). Second, the Delaware Supreme Court considered if the offenses should have been severed pursuant to Delaware Superior Court Criminal Rule 14 for being prejudicial. After concluding that the "record does not reflect any specific prejudice to [Petitioner]," the Delaware Supreme Court held that the trial court did not abuse its discretion in permitting joinder of the charges. *Id.*

In Petitioner's Rule 61 proceeding, the Superior Court found that the "substantive argument that [Petitioner] was prejudiced by the joinder is foreclosed by the Supreme Court's opinion that 'the record does not reflect any specific prejudice to [Petitioner] either.'" *Jackson*, 2014 WL 4407844, at *12. As correctly noted by the State in the instant proceeding, "[r]epackaging the argument as an ineffectiveness claim may have triggered the procedural bar [of Rule 61(i)(4)], but it did not change the fact that [Petitioner] could not demonstrate prejudice under *Strickland*." (D.I. 27 at 15)

After reviewing Petitioner's instant argument in the context of the foregoing record, the Court concludes that the Superior Court did not unreasonably apply clearly established federal law in denying Petitioner's contention that he was prejudiced by appellate counsel's joinder argument. Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic,[1] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*,

---

[1] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without specter of being labeled ineffective).

528 U.S. 259, 272 (2000).  As a general rule, the presumption of effective assistance of appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  In order to establish prejudice, a petitioner must show a reasonable likelihood that the court would have resolved the case differently on appeal, if not for counsel's deficiencies.  *See United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

In this proceeding, Petitioner does not contend that appellate counsel should have a raised a different or clearly stronger argument.  Rather, he asserts the same argument that appellate counsel presented to the Delaware Supreme Court on direct appeal, which, in turn, was the same argument Petitioner presented to the Delaware state courts in his Rule 61 proceeding and post-conviction appeal: that the "real prejudice" created by the joinder of offenses included "the jury cumulating evidence and inferring a general disposition."  (D.I. 3 at 18; D.I. 25-4 at 14; D.I. 25-8 at 27; D.I. 25-9 at 186)  Given these circumstances, the Court concludes that Petitioner has failed to overcome the presumption of effective assistance of appellate counsel.

Moreover, Petitioner has failed to demonstrate that he suffered any prejudice from appellate counsel's alleged deficiencies because he cannot show a reasonable probability that, but for appellate counsel's performance, the severance argument would have succeeded on direct appeal.  Pursuant to well-established Delaware law, the decision to deny Petitioner's motion to sever lay within the sound discretion of the trial court, and could only be overturned by showing a "reasonable probability that substantial prejudice may have resulted from a joint trial."  *Weist v. State*, 542 A.2d 1193, 1195 (Del. 1988).  When determining if the trial court abused its discretion in denying a motion to sever, the reviewing court "must examine the facts in each case."  *Id.*  In deciding Petitioner's direct appeal, the Delaware Supreme Court independently examined the facts of the case and concluded that the "record does not reflect any specific prejudice to [Petitioner] either."  *Jackson*, 990 A.2d at 1287.  In

15

other words, despite Petitioner's contention that he suffered real and clear prejudice, the Delaware

Supreme Court reached its own determination to the contrary.  That the Delaware Supreme Court

disagreed with Petitioner's argument does not demonstrate that appellate counsel's argument was

defective.

Thus, viewing the Superior Court's decision through the "doubly deferential" lens applicable

to ineffective assistance of counsel arguments on habeas review, the Court concludes that there is no

possibility that fairminded jurists could disagree that the Superior Court reasonably applied *Strickland*

in denying Petitioner's argument about appellate counsel's performance with respect to the

severance issue.

### 2.   Appellate counsel's failure to effectively argue the search and seizure issue

On direct appeal, appellate counsel argued that Petitioner's "apprehension, detention and

search violated the Delaware and United States Constitutions."  *Jackson*, 990 A.2d at 1288.  The

Delaware Supreme Court addressed the search and seizure issue under the federal constitution but

expressly declined to consider the issue under the Delaware constitution, deeming the claim waived

due to Petitioner's failure to cite relevant Delaware constitutional provisions or Delaware caselaw.

*See Jackson*, 990 A.2d at 1288.  Petitioner's Claim Three appears to complain about appellate

counsel's presentation of the search and seizure issue under the Delaware constitution, an issue that

is discussed later in this Opinion.  Here, the Court will focus on Petitioner's challenge to the analysis

under the United States Constitution.

As summarized by the Delaware Supreme Court, Petitioner presented the following

argument as to why the trial court improperly denied his suppression motion:

> [Petitioner] claims that his arrest and search were illegal and that the
> evidence obtained during the illegal arrest and search is "fruit of the
> poisonous tree" that should have been excluded.  He asserts that the

16

> police lacked a reasonable and articulable suspicion to stop him because he was not engaged in any criminal conduct at the time. He argues that he was merely "riding a bicycle through a parking lot at 8:30 p.m. on a Saturday night and happened to be a thin, black man with facial hair." Although he recognizes that the police were searching for a suspect described as a "black male, thin, six feet tall, dark complexion and with facial hair," [Petitioner] contends that the suspect had been wearing "a puffy jacket, golden brown in color" and was identified as Corron Moon. [Petitioner] argues that "[h]is jacket did not match that worn by [the] original suspect, Moon." Therefore, he claims, his apprehension, detention and search violated the Delaware and United States Constitutions. However, he cites no authority for either contention.

*Jackson*, 990 A.2d at 1288. The Delaware Supreme Court proceeded to hold that Petitioner failed to

assert a violation of the United States Constitution, explaining:

> With regard to the bicycle and bag [Petitioner] discarded prior to his detention by Officer Guzevich, the Fourth Amendment's protection had not yet attached. The Fourth Amendment's protection from unlawful searches and seizures does not attach until an officer applies physical force to the suspect or the suspect submits to an officer's show of authority. In this case, [Petitioner] was not seized until he was physically subdued by Officer Guzevich following the foot chase. Property discarded by a suspect who refuses to submit to an officer's authority and flees is deemed abandoned.
>
> There is no legal basis under the Fourth Amendment to suppress that abandoned property. Therefore, the Superior Court properly denied the motion to suppress the bag [Petitioner] threw away and the bicycle he left behind as he fled from the police. Under the Fourth Amendment of the United States Constitution, [Petitioner] was seized when he submitted to Officer Guzevich's show of authority, *i.e.,* when he was physically subdued. He discarded the bag and bicycle before his seizure. Accordingly, we conclude that the trial court properly denied the motion for suppression of the bag and bicycle because they were abandoned and not protected by the Fourth Amendment.
>
> With regard to the items recovered from [Petitioner's] person after his arrest, we conclude that the police had probable cause to arrest [Petitioner] and lawfully seized those items incident to [Petitioner's] arrest. The Superior Court ruled that those items – the iPod, palm pilot, class ring, photo, and twenty dollars – were lawfully seized incident to [Petitioner's] arrest. The State did not address the seizure of those items. Whether suppression was properly denied depends on

17

whether the arrest was lawful.  Therefore, we must consider whether the police had probable cause to arrest [Petitioner].

Whether there was probable cause to arrest a defendant is determined under a totality of the circumstances test.  [Petitioner] argues that the police had no reason to stop him and implies that the police stopped him solely on the basis of race.  Although a stop based solely on race is impermissible under the Fourth Amendment, the "use of race may be legitimate when it is one among several factors suggestive of criminality."

[Petitioner] matched the description of the suspect given by Officer Herring.  That description contained one racial element, but the other, racially neutral circumstances surrounding [Petitioner's] arrest were amply sufficient to establish probable cause.  [Petitioner] was in a nearly deserted shopping center, in an area the police had cordoned off, shortly after a suspect of similar appearance had fled from Officer Herring.  In addition, Jackson fled from Officer Guzevich immediately upon seeing the police car and discarded the bag he was carrying.  Having considered the totality of the circumstances, we conclude that the record reflects that the police had probable cause to lawfully arrest [Petitioner].  Accordingly, the Superior Court properly denied the motion for suppression of the items the police discovered on [Petitioner's] person during their search incident to his lawful arrest.

*Jackson*, 990 A.2d at 1288-90.

In holding that Petitioner's Fourth Amendment rights were not violated by the search and seizure – and therefore, that the trial court properly denied Petitioner's suppression motion – the Delaware Supreme Court cited and applied the governing federal law applicable to the Fourth Amendment issues in this case.  For instance, the Delaware Supreme Court determined that the bag and bicycle were abandoned and not protected by the Fourth Amendment after analyzing the issue under *California v. Hodari D.,* 499 U.S. 621, 626 (1991).  *See Jackson*, 990 A.2d at 1289 & nn. 31, 33-36.  Similarly, the Delaware Supreme Court applied the totality of the circumstances test articulated in *Illinois v. Gates*, 462 U.S. 213, 231 (1983), to determine if the police had probable cause to arrest Petitioner – and, having found probable cause, further applied federal law to permit the police to

seize the items discovered on Petitioner's person pursuant to *Chimel v. California*, 395 U.S. 752 (1969), because such seizure was incident to a lawful arrest, *see Jackson*, 990 A.3d at 1289-90 & ns. 38, 41.

Given the Delaware Supreme Court's thorough federal constitutional analysis in holding that the trial court properly denied Petitioner's suppression motion, Petitioner cannot demonstrate a reasonable probability that the outcome of his appeal would have been different but for appellate counsel's presentation of that issue on direct appeal. Thus, viewing the Superior Court's Rule 61 decision through the "doubly deferential" lens applicable to ineffective assistance of counsel arguments on habeas review, the Court concludes that there is no possibility that fairminded jurists could disagree that the Superior Court reasonably applied *Strickland* in denying Petitioner's suppression argument.

### C. Claim Three: Appellate Counsel's Failure to Present Search and Seizure Issue Under Delaware Constitution

In Claim Three, Petitioner contends that appellate counsel provided ineffective assistance on direct appeal by failing to argue that his seizure and subsequent search by police violated the Delaware Constitution. According to Petitioner, appellate counsel's failure to make specific references to the Delaware Constitution in his appellate argument "directly caused the [Delaware Supreme Court] to determine that [he] had waived all claims of illegal search or seizure under the Delaware constitution." (D.I. 3 at 21-23)

In order to understand Petitioner's complaint, the Court will reference Petitioner's argument that he presented on post-conviction appeal, as set forth below:

> The Delaware Constitution provides broader guarantees with respect to searches and seizures than the United States Constitution provides. Under the Fourth Amendment to the United States Constitution, a seizure occurs when a police officer applies physical force or the

19

suspect submits to the officer's show of authority. In this case, [Petitioner] was seized under the federal constitution when Officer Guzevich physically restrained [Petitioner]. [Petitioner] discarded property directly linking him to the burglary at 191 Brandywine Boulevard before the seizure. Therefore, [the Delaware Supreme Court] determined that the property discarded was abandoned and not subject to Fourth Amendment protection.

However, under Article I, § 6 of the Delaware constitution, a stop occurs at the point where a reasonable person would have believed he or she was not free to ignore the police presence. In this case, that occurred when Officer Guzevich activated his overhead lights in his car and yelled at [Petitioner] to stop. [Petitioner] discarded the property after this occurred and therefore, would not be considered abandoned property. In order to determine if [Petitioner] was detained lawfully under the Delaware constitution, the reasonableness of the officer's suspicion must rest on the facts known to him at the time he ordered [Petitioner] to stop.

At the time Officer Guzevich ordered [Petitioner] to stop, all he knew was that there was a broadcast issued by another officer about a driver of a car that had fled on foot that was African American, six feet tall, with a thin build, medium to dark complexion, medium length hair, and facial hair wearing a puffy jacket that was goldish brown. Forty minutes after that broadcast and in a different location from where the person had fled, Officer Guzevich saw an African American male on a bicycle enter a parking lot with fair lighting who appeared tall and thin with facial hair and a dark complexion. He was also wearing a hat. There was no evidence that the person on the bicycle was doing anything illegal at the time the officer saw him. The question is whether this evidence supports a finding of reasonable articulable suspicion to stop [Petitioner].

(D.I. 25-8 at 29-31)

After reviewing Claim Three in light of the record and within the legal framework articulated in *Strickland*, the Court concludes that appellate counsel's failure to explicitly argue that the search and seizure violated Petitioner's rights under the Delaware Constitution did not rise to the level of constitutionally ineffective assistance. Perhaps the most critical issue in determining if the property seized by the police should have been suppressed is determining whether the police stop was proper,

which, in turn, depends upon when the seizure of Petitioner occurred.  *See Purnell v. State*, 832 A.2d 714, 719 (Del. 2003); *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).  The answer is different under the U.S. and Delaware Constitutions.  As explained by the Delaware Supreme Court,

> The law concerning unreasonable searches and seizures reflects differing standards between federal and state constitutions and a labyrinth of factual situations.  It is important, however, that Delaware courts be clear.  If an officer attempts to seize someone before possessing reasonable and articulable suspicion, that person's actions stemming from the attempted seizure may not be used to manufacture the suspicion the police lacked initially.

*Jones ,*745 A.2d at 873-74.

In this case, when analyzing the search and seizure issue under the United States Constitution, the Delaware Supreme Court determined that Petitioner was seized when he was physically subdued under Officer Guzevich's show of authority.  Therefore, the discarded items (bag and bike) were abandoned and not subject to Fourth Amendment protection, because the seizure of Petitioner occurred after the items were discarded.

In contrast, under the Delaware Constitution, a seizure occurred when Officer Guzevich turned on his overhead flashing lights and chased Petitioner.  *See State v. Roberts*, 2001 WL 34083579, at *2 (Del. Super. Ct. Sept. 27, 2001).  The significance of this difference is that, under a Fourth Amendment analysis, the Delaware Supreme Court did not need to decide if Officer Guzevich possessed sufficient reason to stop Petitioner, because Petitioner abandoned the bag with stolen property before he was seized.  However, under the Delaware Constitution, Petitioner abandoned the bag and the bike after he had been "seized" by Officer Guzevich's show of authority (*i.e.*, the flashing lights).  As a result, the issue becomes whether, under the totality of the circumstances, Officer Guzevich reasonably believed that Petitioner was the suspect who had fled from Officer Herring.  Stated another way, if Petitioner's "seizure was not based upon reasonable and articulable

21

suspicion, anything recovered as a result of that seizure [was] inadmissible at trial." *Jones*, 745 A.2d

at 869.

During the hearing on the suppression motion, the State expanded the "flashing

light"/seizure premise to demonstrate that the police had a "reasonable and articulable suspicion" to

stop Petitioner, thereby rendering the seized items admissible because they were seized incident to a

lawful arrest, arguing that:

> The Delaware Supreme Court has given greater rights to the citizens
> of Delaware than the United States Supreme Court.  So our position is
> if you take it from the perspective that when [Officer Guzevich] turned
> his lights on and the defendant turned and looked at him, he realized
> at that point – or any reasonable defendant realized at that point – that
> he wasn't free to leave.  Our position is up to that point this case is
> dripping with reasonable articulable suspicion.

(D.I. 25-9 at 52)  During the suppression hearing, the trial court stated that, if it looked at the "sum

totality of the circumstances involved in this matter and determin[ed] whether there was reasonable

articulable suspicion to stop the defendant in this case, [it] must come down on the side of the State

and deny the defendant's motion.  Among the factors [] considered would be the time of the stop

relative to the first sighting by Officer Herring or Herring's first interaction with the defendant."

(D.I. 25-4 at 22)

On direct appeal, although the Delaware Supreme Court did not explicitly consider the

search and seizure issue under the Delaware Constitution, it concluded that the circumstances

surrounding Petitioner's arrest were "amply sufficient" to establish probable cause:

> [Petitioner] matched the description of the suspect given by Officer
> Herring.  That description contained one racial element, but the other,
> racially neutral circumstances surrounding [Petitioner's] arrest were
> amply sufficient to establish probable cause.  [Petitioner] was in a
> nearly deserted shopping center, in an area the police had cordoned
> off, shortly after a suspect of similar appearance had fled from Officer
> Herring.    In addition, [Petitioner] fled from Officer Guzevich

22

> immediately upon seeing the police car and discarded the bag he was carrying. Having considered the totality of the circumstances, we conclude that the record reflects that the police had probable cause to lawfully arrest [Petitioner]. Accordingly, the Superior Court properly denied the motion for suppression of the items the police discovered on [Petitioner's] person during their search incident to his lawful arrest.

*Jackson*, 990 A.2d at 1289-90.

Of all the "amply sufficient" factors the Delaware Supreme Court considered to find probable cause, only Petitioner's discarding of the bag occurred ***after*** Officer Guzevich activated his emergency lights. More significantly, however, is the fact that probable cause is a more demanding standard that reasonable suspicion, both as to the quantity and content of the information necessary to establish it. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."). Since the Delaware Supreme Court affirmed the denial of the suppression motion after determining that the State had established probable cause to arrest Petitioner, Petitioner cannot demonstrate that he was prejudiced by appellate counsel's failure to present an argument based upon the more lenient "reasonable articulable suspicion" standard.

In sum, since the totality of the circumstances justified Petitioner's seizure under the Delaware Constitution, the evidence gathered pursuant to that seizure, including both the objects found on Petitioner's person and those he abandoned in his flight from the police, were properly admissible. For all of these reasons, the Court concludes that the Superior Court did not unreasonably apply *Strickland* in holding that Petitioner could not establish prejudice from appellate counsel's failure to present the suppression argument as an issue of Delaware Constitutional law.

### D.  Claim Four: Trial Counsel's Ineffective Cross-Examination of Fingerprint Expert

In his final Claim, Petitioner contends that trial counsel provided ineffective assistance by failing to effectively cross-examine Joseph Sammons, the State's fingerprint expert.  He argues that trial counsel's failure to ask Sammons about his qualifications or the use of inked prints from 1973 constituted deficient performance and resulting prejudice.  The Superior Court rejected this argument, explaining:

> The court finds that the absence of such cross-examination does not amount to the ineffective assistance of counsel.  Trial counsel conducted extensive cross-examination on fingerprints, and it is well within the reasonable exercise of professional judgment to forego a line of cross examination specific to the unidentified prints on one item.  [Petitioner] cites no legal authority or learned treatise to support the notion that the age of the [Petitioner's] fingerprint exemplar might affect the validity of the comparison.  Insofar as the court is aware, an individual's fingerprints do not change over time.  Trial counsel was reasonable, therefore, in omitting such cross examination.

> Even if the court were to assume that trial counsel was ineffective by pursuing these lines of questioning, [Petitioner] has not shown the requisite prejudice.  With respect to the unknown prints on the change jar, [Petitioner's] fingerprints were found on a window of the burglarized home.  Thus, even if trial counsel had developed evidence that the prints on the change jar belonged to the victim or some third person, that evidence would have done little to show that [Petitioner] did not, at least at a minimum, participate in the burglary.  And as noted above, there is no reason to believe [Petitioner] could have adduced testimony that the age of the exemplar would call into question the validity of the exemplar.  The court is left then with little more than speculation that the omitted cross-examination might have changed the result.  This is not enough.  Consequently, [Petitioner] suffered no prejudice from the alleged ineffectiveness of trial counsel in this regard.

*Jackson*, 2014 WL 4407844, at *6.

The Superior Court's denial of Claim Four was neither contrary to, nor an unreasonable application of, *Strickland*.  First, the record reveals that trial counsel began his cross-examination of Sammons by questioning him about his credentials, and confirmed that Sammons' initial training

24

consisted of a two-week course in 1990.  (D.I. 25-3 at 21)  Trial counsel also asked if Sammons received any additional training, and elicited Sammons' response that no professional organization had ever certified him as a fingerprint examiner.  (*Id.*)  Additionally, trial counsel questioned Sammons about whether any other colleague reviewed his analysis of Petitioner's prints.  (D.I. 25-3 at 22)  Thus, Petitioner's first complaint about trial counsel's questioning of Sammons is factually baseless.

Next, Petitioner alleges that trial counsel failed to cross-examine Sammons about the trustworthiness, reliability, or quality of his 1973 inked fingerprints.  However, since Petitioner offered nothing to suggest that an individual's fingerprints change over time, or that the 1973 prints were otherwise unreliable, he failed to show either that trial counsel "could have adduced testimony that [] would call into question the validity of the [1973] exemplar"[2] or that his proposed cross-examination could have changed the outcome of his trial.  In fact, the record shows that Petitioner's own fingerprint expert reviewed the State's fingerprint comparisons and verified that the crime scene fingerprints were "identical to those prints on the [1973] card."  (D.I. 25-11 at 13-14)  Thus, the Superior Court reasonably applied *Strickland* in holding that Petitioner failed to establish prejudice from appellate counsel's cross-examination of the fingerprint expert.  Accordingly, the Court will deny Claim Four for failing to satisfy § 2254(d)(1).

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district

---

[2]*Jackson*, 2014 WL 4407844, at *6.

25

court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also*

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VI.   CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied.  An appropriate Order will be entered.